IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**RICHARD K. KAVELER,**

    **Plaintiff,**

**v.**

**U.S. BANCORP INSURANCE SERVICE, LLC,**

    **Defendant.**                                Case No. 06-CV-04-DRH

### MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION

Before the Court is Defendant's Motion for Summary Judgment (Doc. 15), made pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 56**, to which Plaintiff has filed an opposing Response (Doc. 17) and Defendant replied (Doc. 20). Plaintiff was employed by Defendant as an Insurance Specialist from December 1, 2000, until he was terminated on or about February 28, 2005, just one month shy of his 58th birthday (*see* Doc. 16, p. 2; Doc. 1, ¶¶ 5 & 11). Believing he was a victim of illegal age discrimination, Plaintiff filed a four-count suit against Defendant. Count I states a claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"), **29 U.S.C. §§ 621 - 634**. Count II states a claim of retaliatory discharge under the ADEA. Count III states a claim of age discrimination under the Missouri Human Rights Act ("MHRA"), **MO. REV. STAT. §§ 213.010-213.095**. Count IV states a claim of retaliatory discharge under the MHRA (Doc. 1).

Defendant believes it is entitled to summary judgment because the evidence shows Plaintiff was terminated for legitimate, non-discriminatory reasons. Contesting this assertion, Plaintiff argues his suit should survive summary judgment due to existing questions of fact regarding Defendant's motivation behind Plaintiff's termination. The Court, addressing the parties' specific contentions herein, finds in favor of Plaintiff.

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate under the Federal Rules of Civil Procedure when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986)**. The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Wollin v. Gondert*, **192 F.3d 616, 621-22 (7th Cir. 1999)**. The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *Schneiker v. Fortis Ins. Co.*, **200 F.3d 1055, 1057 (7th Cir. 2000);** *Baron v. City of Highland Park*, **195 F.3d 333, 337-38 (7th Cir. 1999)**.

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations as stated in the pleadings. Rather, the nonmovant

must show through specific evidence that an issue of fact remains on matters for which the nonmovant bears the burden of proof at trial. ***Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd,* **51 F.3d 276** (citing ***Celotex*, 477 U.S. at 324**).

**B.     Analysis**

Defendant first asserts that Counts I and II of Plaintiff's Complaint should be dismissed as untimely filed. Defendant then bases its request for summary judgment on the grounds that: (1) Plaintiff cannot meet his prima facie burden to establish age discrimination in Counts I and III, and (2) Plaintiff cannot show that he engaged in a statutorily protected activity causally connected to his termination for his retaliation claims in Counts II and IV. The Court will consider these bases in like sequence.

**1.     Timeliness of Filing**

Counts I and II of Plaintiff's Complaint are brought pursuant to the ADEA, which requires "an aggrieved person to file suit [within] 90 days after receipt of the Notice of Dismissal or Termination . . . ." **29 C.F.R. § 1626.18(c);** ***Houston v. Sidley & Austin*, 185 F.3d 837, 838-39 (7th Cir. 1999)**. Defendant states Plaintiff's Notice of Right to Sue was issued and mailed by the EEOC on September 30, 2005, however, Plaintiff admits he has no recollection of the actual date he received the Notice (Doc. 16, p. 11). The record shows Plaintiff filed suit on January 3, 2006 (Doc. 1), which Defendants note is 94 days after the Notice of Right to Sue

was issued and mailed. Defendants arrive at this calculation via **FEDERAL RULE OF CIVIL PROCEDURE 6(e)**, which allows a party an additional three days to the respond if service is made by mail, and also cite case law for the proposition that when the date of receipt is unknown, the courts presume receipt within three days of mailing, under **Rule 6(e)** (Doc. 16, pp. 11-12). While the cases Defendant cites are not themselves binding precedent, the Court finds this rationale sound, as proscribed by the United States Supreme Court. ***See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984)(presuming right to sue notice from EEOC was received three days after its issuance, pursuant to Rule 6(e) when plaintiff did not have proof otherwise)**.

Plaintiff contends his filing is still considered timely even without proof that he received the Notice later than three days after issuance, as the 93rd day, January 2, 2006, fell on a federal holiday and thus, the next date Plaintiff could file suit was January 3, 2006, which he did. If the Notice was issued on September 30, 2005, which was a Friday, then the earliest it could have been received was Monday, October 3, 2005. Counting 90 days from October 3, 2005 makes the deadline fall on January 1, 2006, which was a Sunday.[1] Asking the Court to take judicial notice that Monday, January 2, 2006, was a federal holiday, the earliest date he could file would have been Tuesday, January 3, 2006, and this date was timely under **Rule 6(a) (Doc. 17, p. 6)**. Consequently, in its Reply (Doc. 20), Defendant does not again

---

[1] In his Response, Plaintiff actually claims the 90 days fell on December 31, 2005, but the Court finds 90 days from October 3, 2005, to be January 1, 2006.

address the timeliness issue.

The Court takes judicial notice of the fact that Monday, January 2, 2006, was a federal holiday (New Year's Day) and that the Clerk's office was closed for filing new matters. Therefore, the Court finds Plaintiff timely filed his Complaint and Counts I and II should not be dismissed as untimely.

### 2. Age Discrimination

Counts I and III state claims of age discrimination, the first brought pursuant to the ADEA, the later pursuant to the MHRA. Because the MHRA "mirrors federal law," claims made pursuant to the MHRA are analyzed under the same federal standards as ADEA claims. **See Walton v. McDonnell Douglas Corp., 167 F.3d 423, 426 n.4 (8th Cir. 1999)(citing Kneibert v. Thomson Newspapers, Mich. Inc., 129 F.3d 444, 451 n.3 (8th Cir. 1997)); see also Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir. 1994)**. Defendant asserts that Plaintiff fails to meet his *prima facie* burden to establish age discrimination because he cannot show he was performing his job satisfactorily or that he was treated less favorably than substantially younger, similarly situated employees (Doc. 16, pp. 12-15).

The ADEA protects persons age 40 years and up from being employer discrimination. **Fairchild v. Forma Scientific, Inc. , 147 F.3d 567, 571 (7th Cir. 1998)(citing 29 U.S.C. § 623(a)(1); O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996))**. To prevail on an age discrimination claim, Plaintiff

must show "he would not have been terminated 'but for' his employer's intentional age-based discrimination." **Id. (citing Konowitz v. Schnadig Corp., 965 F.2d 230, 232 (7th Cir. 1992))**. Age discrimination can be proven by direct evidence, but when this is not possible, Plaintiff can rely upon "indirect" proof. **Luks v. Baxter Healthcare Corp., 467 F.3d 1049, 1052 (7th Cir. 2006)(internal citation omitted)**. When relying on indirect evidence to establish a *prima facie* case of age discrimination, Plaintiff must show he: (1) was in the protected age group, over the age of forty, (2) his job performance met his employer's legitimate expectations, (3) he was subjected to an adverse employment action, and (4) his employer treated substantially younger, similarly situated employees more favorably. **Barricks v. Eli Lilly and Co., 481 F.3d 556, 559 (7th Cir. 2007)(internal citation omitted)**.

Should Plaintiff succeed in establish a *prima facie* case, then under the burden shifting method of **McDonnell Douglas, 411 U.S. 792 (1973)**, the burden of proof shifts to Defendant to show it had a "legitimate, nondiscriminatory reason for its decision" to subject Plaintiff to an adverse employment action. **Id.** Plaintiff can rebut Defendant's proffered explanation, showing it is instead a pretext for discrimination, by bringing forth evidence that calls into question the veracity of Defendant's explanation. **Id.; *see also* Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 578 (7th Cir. 2003)("Shifting and inconsistent explanations can provide a basis for a finding of pretext.")**.

### a. Meeting Work Performance Expectations

Defendant argues Plaintiff has failed to meet his burden of showing a *prima facie* case of age discrimination, asserting that the facts show it is undisputed Plaintiff was not meeting his employer's legitimate work performance expectations (Doc. 16, pp. 13-14). The applicable facts are recounted below.

Employed as an Insurance Specialist, Plaintiff's initial function back in December, 2000, was to provide insurance services to U.S. Bancorp's Private Client Group, which catered specifically to more affluent clientele (Doc. 16, p. 3, citing Ex. B - Deposition of John Falk 37:1-38:18; Ex. A - Deposition of Richard Kaveler 30:10-31:2). Plaintiff was to educate, train and assist officers of the Trust Company and the financial consultants, while encouraging them to sell insurance products to their clientele (Doc. 16, Kaveler Dep. 21:15-22:7). Additionally, Plaintiff was allowed to work with the clientele directly, if the situation permitted (Kaveler Dep. 22:8-16). In 2002, Plaintiff's job parameters were revised due to a change in Defendant's business model; he was assigned to supervise six specific financial consultants ("FC's") in the St. Louis regional area (Kaveler Dep. 26:9-21; Ex. B - Falk Dep., 37:1-20). These six FC's were previously assigned to Danielle Rolfes, Plaintiff's coworker (Kaveler Dep, Ex. B - Falk Dep., 39:2-20). Prior to the restructuring, Rolfes was responsible for all the financial consultants in the St. Louis region. After the reassignment of the six FC's to Plaintiff, Rolfes continued to supervise her thirty-eight remaining FC's.

Defendant measured Plaintiff's job performance primarily due to his yearly generated revenue, which included revenue generated by his assigned FC's

(Kaveler Dep. 152:2-9 and Dep. Ex. 8). Each year, Plaintiff prepared his own business plan and presented it to his supervisors, apprising them, among other things, of his anticipated annual revenue goal (Kaveler Dep. 41:14-42:19; Falk Dep. 31:9-32:7). Using the information provided, Defendant then set Plaintiff's official revenue goals, oftentimes "recalibrating" it to a lower amount than Plaintiff's own projected goal. A summary of Plainitff's official annual revenue goals and actual generated revenue from the years 2001 through 2005 is detailed below.

<u>Plaintiff's Revenue Goals</u>:

2001 Revenue Goal = $250,000
2002 Revenue Goal = $300,000
2003 Revenue Goal = $400,000
2004 Revenue Goal = $400,000

<u>Plaintiff's Actual Revenue</u>:

2001 Actual Revenue = $56,291
2002 Actual Revenue = $158,303
2003 Actual Revenue = $170,971
2004 Actual Revenue = $533,818

Defendant first put Plaintiff on a Performance Improvement Plan ("PIP") in June 2003, the goals of which were delivered by John Falk, Rick Jacobsmeyer and Mike Johnson, Plaintiff's supervisors at the time (Kaveler Dep. 49:15-50:21 and Dep. Ex. 7). The PIP advised Plaintiff he was expected to generate $25,000 paid business in July 2003, $30,000 in August and $35,000 in September; failure to do so could result in further disciplinary action (Kaveler Dep. Ex. 7). In response to the PIP, Plaintiff requested more FC's to aid in generating the expected revenue; pursuant to his request, Defendant reassigned one of Plaintiff's current FC's back to Rolfes and the reassigned seven of Rolfes FC's to Plaintiff (Kaveler Dep. 50:13-21, 52:7-53:12). Plaintiff failed to meet the goals as stated in the 2003 PIP, exceeding them only in the month of August, 2003 (Kaveler Dep. Ex. 6). In 2004, Plaintiff was

able to meet his revenue goal. In fact, he exceeded his goal. However, Defendant notes that a large portion of Plaintiff's 2004 revenue was generated from a single case in October 2004, accounting for $220,988 of the $533,818 in revenue (Kaveler Dep. 86:23-87:11 and Dep. Ex. 11). At all other times he fell far short of his revenue goals and without this isolated incident, he would have also not met his 2004 Revenue Goal.

Defendant also measured Plaintiff's job performance via the performance of his assigned FC's: it was a standard expectation for every Insurance Specialist to have 70% of his or her assigned FC's to meet their individual revenue goals (Kaveler Dep. 73:22-74:2). In 2004, only three of Plaintiff's thirteen FC's met their revenue thresholds and of the remaining ten, eight generated less than $10,000 annual revenue (Falk Dep. 43:14-23). Falk discussed Plaintiff's performance in December 2004, cautioning Plaintiff not to rely on the big deals, but to work harder maintaining his revenue on a consistent monthly basis (Kaveler Dep. 128:5-24). Because Plaintiff's monthly revenue did not improve subsequent to October, 2004, Falk placed him on a 60-day Action Plan in January 2005 (Kaveler Dep. 123:20-124:3 and Dep. Ex. 16). In the 2005 Action Plan, Plaintiff was expected to produce $33,333 each month for January and February 2005 (Kaveler Dep. Ex. 16). Plaintiff failed to meet the requirements of the Action Plan, generating only $10,000 in revenue in January 2005 and approximately $4,200 in February 2005 (Kaveler Dep. 140:20-141:21, 144:12-19 and Dep. Exs. 17 & 18). Defendant decided to terminate Plaintiff on February 28, 2005 (Falk Dep. 29:9-14).

Plaintiff, claiming his 2004 revenue exceeded his goal by 133%, ranking second highest in the company, believes he was more than adequately meeting legitimate work expectations when he was terminated just two months later (Doc. 17, Ex. 1). Therefore, he believes the real reason behind his termination was his age. As exhibited in his Response, Plaintiff's last formal written annual review gave him an overall rating of "3" which meant: "Solid Performance . . . consistently fulfils expectations and at time exceeds them" (Doc. 17, Exs. 2 & 3). Plaintiff asserts that in 2004, the average production per FC was roughly $19,500, yet the average production per FC's assigned to Plaintiff for 2004 was $41,063 (Falk Dep. 41:18-20 and Doc. 17, Ex. 1).

Plaintiff largely bases his claim of age discrimination upon the alleged disparity of Defendant's treatment of Plaintiff compared to his co-worker, Danielle Rolfes, who was not terminated and never put on an Action Plan or PIP. Rolfes is roughly fifteen years younger than Plaintiff (Falk Dep. 28:4-16). Unlike Plaintiff's revenue performance in 2004, Rolfes did not meet her revenue goal in 2004 (Doc. 17, Ex. 1). Rolfes, as a Retail Insurance Specialist, initially supervised all the St. Louis region FC's until six of them were reassigned to Plaintiff's supervision; even after this reassignment, she still supervised thirty-eight FC's to Plaintiff's six (Falk Dep. 39:2-11). Along with the larger number of FC's, Plaintiff also complains that the FC's assigned to Rolfes were in a "tighter geographic margin," thereby giving her a better opportunity to generate more revenue "because she could cover [that territory] more thoroughly" (Falk Dep. 40:7-15). Acknowledging that in 2004, another seven FC's

Page 10 of 18

previously assigned to Rolfes were reassigned to him, Plaintiff believes this was still an unfair division of FC's as he was "given the under-performers" (Doc. 17, p. 4; Kaveler Dep. 114:5-8). Additionally, Plaintiff states that the 2004 revenue goal for Rolfes were reduced to $22,092 per FC, while Plaintiff was expected to generate $33,333 per FC[2] (referring to Doc. 17, p. 5, Ex. 4).

Plaintiff never agreed to sign his 2005 Action Plan, disbelieving his prior performance warranted such measures or that it accurately depicted his job performance (Kaveler Dep. 129:21-24; 137:2-4). He explains that his lofty annual revenue goals, as proposed in his business plans, were purposely set high to encourage himself and his assigned FC's to strive for maximum productivity (Kaveler Dep. 54:10-14, 85:25-86:17). To Plaintiff, the static monthly revenue as laid out in the Action Plan seemed impracticable for the sales field, as business opportunities often fluctuate – some months are far better than others (Kaveler Dep. 125:11-126:21). In essence, Plaintiff argues that Defendant was setting him up for failure. Unlike as promised in his 2005 Action Plan, Plaintiff also asserts that Falk never conducted any one-on-one meetings with to help him meet the Plan's requisite monthly revenue goals (Kaveler Dep. 128:25-129:20).

---

[2] The Court notes that Plaintiff's referenced exhibit does not seem to mathematically align with this assertion (or else it is not clearly shown how this reduction in revenue goals was determined) and the deposition testimony excerpt Plaintiff also refers to is not attached to his Response, nor is it part of the transcript excerpts of Plaintiff's deposition attached to Defendant's memorandum in support of its Motion for Summary Judgment.

### b. Less Favorable Treatment than Substantially Similar Employee

Defendant also asserts that Plaintiff cannot make a *prima facie* case because the facts do not show that Defendant treated him less favorably than a substantially younger, similarly situated employee. Plaintiff counters Defendant's assertion, arguing that the facts show he and Danielle Rolfes (who is fifteen years his junior) were both Insurance Specialists, yet he complains she was assigned more FC's, while he received only a handful, most of whom were "under performers" (Doc. 19, Kaveler Dep. 40:15-20). She also received, according to Plaintiff, a better geographic sales territory, allowing more opportunity to generate higher revenue. Both she and Plaintiff were supervised by John Falk, yet she was never placed on an Action Plan in 2005, despite the fact that her annual revenue was less than Plaintiff's and she did not quite meet her 2004 revenue goal. However, in rebuttal, Defendant offers that 69% of Rolfes' FC's met their threshold revenue goals in 2004 (Falk Dep. 36:1-17).

Defendant argues that Rolfes is not substantially similar to Plaintiff: she had more seniority, initially supervised all the FC's throughout the entire St. Louis sales region, and her position differed because she was on the Insurance retail side and did not work with the Private Client Group as Plaintiff did. She met her numbers and was never placed on an Action Plan or PIP.

Plaintiff argues that any "legitimate reason" Defendant offers for his

termination is merely a pretext. In other words, Plaintiff believes he has met his burden of showing age discrimination under the burden-shifting **McDonnell Douglas** method by introducing evidence that he was a 58-year old, performing satisfactorily (he was the second-highest Insurance Specialist in revenues for 2004), was terminated and treated less favorably than Rolfes, who is a substantially younger, similarly-situated employee (Doc. 17, p. 10). Plaintiff argues Defendant's reason for terminating him is merely a pretext to cover the age discrimination, as his performance in 2004 was just as good or better than Rolfes', yet he was the one placed on the action plan and shortly thereafter, terminated. To counter Defendant's assertion that Plaintiff and Rolfes were not similarly situated employees, Plaintiff cites **Timmons v. General Motors Corp., 469 F.3d 1122, 1126 (7th Cir. 2006)** for the proposition that showing less favorable treatment, "really requires a showing 'that the circumstances surrounding the adverse action indicate that it is more likely than not that his disability was the reason for it,'" as sometimes it is not possible to identify similarly situated employees. Therefore, Plaintiff proffers that a reasonable juror could conclude, given the facts, it was more likely than not Plaintiff's age was the predominant factor in Defendant's decision to terminate him (Doc. 17, p. 10).

Plaintiff has clearly shown as a man in his upper fifties, he is in a protected class and, because he was terminated, that he was subjected to an adverse action by his employer. Defendant does not dispute these facts. Viewing the facts of this case, the Court finds a material question of fact exists as to whether his

Page 13 of 18

termination was based upon his age. Although the numbers indicate Plaintiff failed for a number of years to meet his revenue goals, what is also clear from the numbers is that in 2004, Plaintiff exceeded his annual revenue goal and was terminated two months thereafter. What is unclear from the numbers, however, is whether Plaintiff did not have what it takes to meet his employer's expectations or whether Plaintiff was not given the proper means by which to achieve success. Coupled with the fact that Rolfes, a coworker who Plaintiff asserts is a "substantially younger, similarly situated employee," may have been treated more favorably in the resources she was provided by Defendant in order to meet her goals. Granted, it is not the Court's business to determine the appropriate policies and job expectations an employer must have, yet in this case, the facts are not uncontroverted that Defendant's expectations of Plaintiff, especially as outlined in his 2005 Action Plan, were "legitimate." As the facts remain in question, it is possible a reasonable trier of fact could find that Plaintiff has stated a *prima facie* case of age discrimination or, has shown Defendant's termination of Plaintiff due to his failure to meet legitimate job expectations was a mere pretext. Therefore, Plaintiff's claims of age discrimination will survive summary judgment.

    **3.    Retaliation**

Counts II and IV of Plaintiff's Complaint state a claim for retaliation, under the ADEA and the MHRA, respectively. To establish a *prima facie* case of retaliation, Plaintiff can apply either the direct or indirect method. Under the direct method, Plaintiff must show: (1) he engaged in a statutorily protected activity; (2) he

was subjected to an adverse employment action by his employer; and (3) the two are causally connected. ***Kodl v. Bd. of Educ. School Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007)(citing *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir.2005))**. The indirect method requires Plaintiff show: (1) he engaged in a statutorily protected expression or activity; (2) he was meeting his employer's legitimate work expectations; (3) he was subjected to an adverse employment action by his employer; and (4) he was treated less favorably than similarly situated employees who did not engage in that statutorily protected expression or activity. ***Id.* (citing *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir.2006))**. Defendant argues summary judgment is warranted because Plaintiff fails to establish that he engaged in a statutorily protected activity or that it was causally connected to his termination (Doc. 16, pp. 15-18).

In his Complaint, Plaintiff alleges he was terminated because he expressed concern that Defendant was discriminating against him due to his age. This allegation stems from a letter written by Plaintiff to his supervisor, John Falk, in mid-January 2005 (Doc. 1, ¶¶ 12-13). The letter, attached as Exhibit 20 to Plaintiff's deposition transcript, was written in response to his 2005 Action Plan. In the letter, he questions the disparity of Defendant's treatment between Plaintiff and Rolfes, as well as the characterization of his 2004 work performance as inadequate (Doc. 16, Ex. A - Kaveler Dep., Ex. 20). Specifically, the part of the letter in which Plaintiff discusses age discrimination reads: "Frankly, I am concerned that factors

other than 'performance issues' are inappropriately being considered. I think that it is vital that similarly situated employees be treated equally" (*Id*.).

A statutorily protected activity or expression must specifically indicate the complained-of discrimination "occurred because of sex, race, national origin, or some other protected class. Merely complaining in general terms of . . . harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." **Id.** Thus, Defendant asserts Plaintiff has not engaged in a protected activity or expression, as he does not specifically reference discrimination based upon a protected class, such as age. Moreover, Defendant also asserts that Plaintiff's comment is not causally connected to his termination, noting it was written *subsequent* to his being placed on the 2005 Action plan and his termination did not occur until nearly a month and a half after the letter was written. Temporally speaking, Defendant believes too much time passed between Plaintiff's letter and his termination for the two events to be "causally connected," especially given the fact that Plaintiff's performance issues were documented prior to his letter. Further, Plaintiff failed to meet the anticipated monthly revenue goals stated in the 2005 Action Plan. Supporting its argument, Defendant cites to ***Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 772-73 (7th Cir. 2002)("[F]or there to exist a telling temporal sequence, the employer's adverse action should follow fairly soon after the employee's protected expression)(internal citation omitted) and *Tomanovich*, 457 F.3d at 665 ("[M]ere temporal proximity is not enough to**

**establish a genuine issue of material fact" especially when employer had previously documented the plaintiff's performance issues prior to his filing a complaint with the EEOC)**.

Opposing, Plaintiff states that although his letter did not specifically state the words "age discrimination," it is clear from its context he was complaining about age discrimination in how he was treated, a man in his late fifties, compared to Rolfes, who was in her early to mid forties (Doc. 17, pp. 11-12). Plaintiff feels the wording leaves no room for doubt as to the meaning the letter conveys.

Despite Defendant's argument to the contrary, the Court finds it fairly obvious that the statement at issue in Plaintiff's letter referred to his suspicions that Defendant discriminated against him in the workplace based on his age. Certainly then, a reasonably juror could find likewise. As to temporal proximity, ***Tomanovich***, cited by Defendant, dealt with a time span of four months between the protected activity and termination. ***Tomanovich*, 457 F.3d at 665**. Here, it was, at most, about 6 weeks between the date of Plaintiff's letter and the date he was terminated. Knowing there is no defined parameters as to what constitutes "too much time" for a causal connection to be established, the Court believes a material question of fact exists which could allow a reasonable juror to find Defendant terminated Plaintiff in retaliation for his statement made in his letter. Even though Defendant documented its concerns regarding Plaintiff's work performance, as stated in his 2005 Action Plan, *prior* to receiving Plaintiff's letter, if Plaintiff prevails on his

age discrimination claims, there is also a possibility a reasonable juror could find Plaintiff's letter further added to Defendant's underlying motivation to terminate him. Accordingly, Plaintiff's retaliation claims will also survive summary judgment.

### III. CONCLUSION

This is an extraordinarily close case, factually speaking, and having so concluded, the Court determines that it must find a dispute of material fact exists as to all of Plaintiff's claims. The Court cannot decide issues of fact. Therefore, a jury will have to make the ultimate decision in this matter. As such, Defendant's Motion for Summary Judgment (Doc. 15) is hereby **DENIED**.

**IT IS SO ORDERED.**

Signed this 17th day of September, 2007.

/s/      DavidRHerndon
**United States District Judge**